**BROWN KWON & LAM LLP**

Brown Kwon & Lam LLP
Attorneys at Law
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
Email: info@bkllawyers.com

Writer's Direct: William Brown, Esq.
wbrown@bkllawyers.com

February 22, 2024

**Via ECF**
Hon. Robert M. Levy, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE:  *Sherpa, et al. v. Rahman Food USA Inc., et al.*
  Case No. 1:23-cv-4583(RML)

Dear Judge Levy:

This firm represents Plaintiff Tashi Sherpa ("Plaintiff or "Sherpa") and opt-in Plaintiff Mohammad Hossain ("Hossain," and together with Sherpa, "Plaintiffs") in the above-referenced matter. We write, jointly with counsel for Defendants Rahman Food USA Inc., Sagar Chinese Inc., Shamiur Rahman, Rukshana Akter, Miron Ahmed Siddique and Jaber Doe (collectively, "Defendants"), to respectfully request judicial approval of the parties' settlement agreement, attached hereto as **Exhibit 1** (the "Agreement"), pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015).

Plaintiff Sherpa's Agreement resolves her wage claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for the amount of $60,000.00. As part of this motion, Plaintiff's counsel requests one-third (1/3) in attorneys' fees ($20,000.00).[1] For the reasons outlined below, the Court should approve this $60,000.00 settlement as a fair and reasonable compromise of Plaintiff Sherpa's claims.

## BACKGROUND

On June 20, 2023, Plaintiff initiated this putative class and collective action against his former employer, alleging that Defendants (i) failed to pay Plaintiff the lawful minimum wage, (ii) failed to pay all due regular and overtime wages, (iii) kept and/or allowed managerial or supervisory employees to keep a portion of the tips that Plaintiff earned from customers, (iv) failed to timely pay wages, and (v) failed to provide proper wage notice and wage statements, in violation of the FLSA and/or NYLL. Moreover, Plaintiff alleged that she was subjected to a hostile work environment on the basis of sex and wrongfully terminated. Defendants answered the complaint and denied all of its substantive allegations.

---

[1] Defendants take no position with respect to Plaintiffs' request for attorneys' fees.

On October 10, 2023, the Court referred the parties to the Eastern District of New York mediation program. A mediation was conducted with mediator Guilio Zanolla on January 8, 2024, during which the parties reached a settlement in principle. After extensive negotiations over the course of a full day of mediation, the parties finalized and executed a Wage and Hour Settlement Agreement and Wage and Hour Release on February 16, 2024.

The formal settlement agreement between the parties is attached hereto as **Exhibit 1**. Although this lawsuit was initiated as a putative class and collective action, a class action was never certified. Accordingly, the proposed Agreement is limited to the release of the named Plaintiff's individual wage claims, and does not release any claims of the putative class members.

Furthermore, opt-in Plaintiff Hossain was employed by Defendants from May 10, 2018 until around August 2019. Hossain opted-in to this action on November 6, 2023, and therefore, his wage claims fall outside the three-year statute of limitations for FLSA claims. As Hossain's settlement does not include a release under the FLSA and exclusively resolves state law claims, judicial approval is not necessary, and therefore, this application is limited to Plaintiff Sherpa.

## **THE SETTLEMENT IS FAIR AND REASONABLE**

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzcha v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 U.S. Dist. LEXIS 20963, at *13 (S.D.N.Y. Feb. 8, 2019) (internal quotation marks omitted).

Accordingly, in determining whether a proposed FLSA settlement is fair and reasonable, courts consider the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335. Based on these factors, the proposed settlement should be approved as fair and reasonable.

A. Plaintiffs' Range of Possible Recovery

The first factor weighs in favor of approval. Based on estimated damages calculations, Plaintiff Sherpa's range of possible recovery for her wage and hour claims was between $0 and $465,078.25. In a best-case scenario, assuming that all of the disputed facts and amounts alleged by Plaintiff Sherpa are entirely correct and that she would prevail on all claims, Sherpa's calculation of damages amounts to $465,078.25, representing $145,309.50 in unpaid wages, $64,625.00 in misappropriated tips, $107,875.00 in liquidated damages for the late payment of wages, $137,268.75 in all other liquidated damages, and $10,000.00 in statutory penalties. See

**Exhibit 2** for Plaintiff Sherpa's assumptions and calculation of damages. The $60,000 settlement amount for Sherpa's wage claims therefore provides a recovery, 28.6% of Plaintiff Sherpa's best-case, unliquidated wages and tips owed under the FLSA/NYLL, and approximately 13% of her total potential damages.  This percentage recovery is well in excess of settlements which have been approved by courts throughout the Second Circuit. *See, e.g.*, *Axelrod v. Posigen CT LLC*, No. 22 Civ. 440 (JCH), 2022 U.S. Dist. LEXIS 238612 (D.Conn. Nov. 7, 2022) (approving settlement with 2.78% recovery, stating, "courts typically do not let the percentage of recovery impede approval, because the parties are generally better-positioned to judge the reasonableness of the settlement amount"); *Redzepagic v. Hammer*, No. 14 Civ. 9808, 2017 U.S. Dist. LEXIS 70424 (S.D.N.Y. May 8, 2017) (approving settlement where plaintiff recovered $49,080.82 and plaintiff's best case recovery was estimated to be $323,000, *not* including liquidated damages); *Flores v. M Culinary Concepts, Inc*, 19 Civ. 1229, 2019 U.S. Dist. LEXIS 210771 (S.D.N.Y. Dec. 6, 2019) (approving settlement that provided for 6.98% of the estimated maximum recovery); *Penafiel v Rincon Ecuatoriano, Inc.*, No. 15 Civ. 112, 2015 U.S. Dist. LEXIS 160352 (S.D.N.Y. Nov. 30, 2015) (approving a $21,000 net recovery for plaintiff where best case damages were estimated to be $522,389.30).

Particularly in light of the litigation risks discussed below, this settlement recovery is a fair and reasonable result.

   B.  Litigation Costs and Risks

The second and third factors also favor approval. If the parties were to continue litigation, the parties would need to complete full discovery, including interrogatories, production of documents, and depositions of all parties and witnesses, including corporate representatives for Defendants. Moreover, continued litigation would likely require extensive legal briefing from both sides, including motions for discovery, class action certification, and summary judgment. As such, further litigation would require significant time and expense. In addition, both sides face serious litigation risks relating to damages and liability.

Defendants argue that their time and pay records contradict Plaintiff's allegations. Specifically, Defendants have produced documents prior to mediation demonstrating that Plaintiff was paid at least the minimum wage. Defendants further assert that Plaintiff utilized a punch-clock during much of her employment, and that Plaintiff was paid for all hours worked.  Defendants also contend that Plaintiff has grossly overstated the number of hours she worked.  This is especially true during the Covid pandemic, when federal, state and city restrictions and guidelines severely restricted Defendants' ability to operate their restaurants.  Defendants also strongly oppose Plaintiff's misappropriated tips claim as well as Plaintiff's calculation of the potential damages for that claim. Plaintiff additionally faces uncertainty over the viability of her late payments claims, and would need to separately pursue her WTPA claims due to a lack of federal standing. While Plaintiff believes she could establish liability, this would require significant time and prolonged litigation, as Defendants expressly deny any violation of law or any liability to Plaintiff. Furthermore, Defendants' argument that they acted in good faith at all times, if successful, would preclude Plaintiff from recovering any liquidated damages.

Finally, Defendants claim that they have experienced a significant decline in business following the Covid-19 pandemic, which raises concerns over the collectability of a judgment if the case had not settled.

Accordingly, Plaintiff believes it to be in her best interest to receive an expedient settlement payment rather than escalate the costs, burdens, and risks of further litigation and trial. Plaintiff believes that the settlement amount is a fair result, accounting for a significant percentage of the alleged back wages owed, while eliminating the burdens and risks of trial.

### C. Arm's-Length Bargaining and Lack of Fraud or Collusion

The fourth and fifth factors also weigh in favor of approval. Plaintiff's counsel and Defendants' counsel have negotiated at arm's length over the course of several months. The parties were only able to reach a resolution with the assistance of Mr. Zanolla, a highly skilled mediator and member of the E.D.N.Y. mediation panel. Mr. Zanolla spent an entire day with the parties and their counsel negotiating a settlement. In addition, both parties' counsel have significant experience handling wage and hour claims. Moreover, the settlement is the product of arm's-length bargaining as the settlement amount represents a significant percentage of Plaintiff's potential recovery – 28.6% of Plaintiff's estimated unpaid wages and tips under her best-case scenario.

Further, the red-flag issues identified in *Cheeks* are not present here. The Agreement does not contain a confidentiality, non-disparagement, or no-rehire clause, and the release is limited to Plaintiff's wage and hour claims under the FLSA and NYLL. See **Exhibit 1**. In order to resolve Plaintiff's non-wage claims, including her harassment, discrimination, and retaliation claims brought in this matter under the NYSHRL and NYCHRL, the parties have entered into a separate agreement in consideration for a release of those non-FLSA claims. The non-FLSA Agreement contains a confidentiality provision limited to the terms of that agreement. *See Santos v. Yellowstone Props., Inc*., No. 15 Civ. 3986, 2016 U.S. Dist. LEXIS 61994, at *3, n. 1 (S.D.N.Y. May 10, 2016) (approving bifurcated settlement agreements, one resolving Plaintiffs' FLSA claims and the other resolving Plaintiffs' discrimination claims and containing a general release); *Chowdhury v. Brioni Am., Inc*., No. 16 Civ. 344, 2017 U.S. Dist. LEXIS 196469, at *13 (S.D.N.Y. Nov. 29, 2017) (Courts "routinely approve bifurcated settlement agreements, in which the parties submit their FLSA agreement for court review and approval but enter into a separate agreement that addresses the non-FLSA claims, which does not require judicial [review and approval] and may contain provisions that would be impermissible under *Cheeks*.") (citing *Ortiz v. Breadroll, LLC*, No. 16 Civ. 7998, 2017 U.S. Dist. LEXIS 73657, at *4-5 (S.D.N.Y. May 15, 2017).

Lastly, as will be discussed below, Plaintiff's counsel's requested attorneys' fees are not excessive as they only seek one-third of the total settlement fund, which is typical of FLSA cases. The parties' separate agreement for the release of Plaintiff Sherpa's non-wage claims also provides for attorneys' fees in the amount of one-third (1/3) of the settlement amount. Based on the foregoing, there is no evidence of fraud or collusion. Therefore, Plaintiff respectfully requests that the Court find that the Agreement is a "fair and reasonable" compromise of her FLSA claims against Defendants and approve the settlement.

## THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE

Plaintiff further seeks approval of attorneys' fees and costs. In accordance with Plaintiff's contingency-fee basis retainer agreement with Plaintiff's counsel, the Agreement provides that Plaintiff's counsel will recover $20,000.00, which is one-third of the $60,000.00 settlement amount. See **Exhibit 1**. The amount requested for attorneys' fees is fair and reasonable as it was

the fee agreed upon by Plaintiff in her retainer agreement, and a contingency fee of one-third is sufficient to account for the risks associated with representation.

Plaintiff's counsel's request for attorneys' fees in the amount of one-third of the settlement amount is fair and reasonable. "[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 U.S. Dist. LEXIS 166890, at *5 (S.D.N.Y. Dec. 14, 2015); *see also Ramirez v. Greenside Corp.*, No. 16 Civ. 726, 2017 U.S. Dist. LEXIS 30527, at *9 (S.D.N.Y. Mar. 3, 2017) (stating "contingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Leon v. Univ. 45 Fruit & Vegetable Corp.*, No. 19 Civ. 8266, 2020 U.S. Dist. LEXIS 48716, at *5 (S.D.N.Y. Mar. 20, 2020) (finding the amount of the fee award reasonable where "the attorneys' fees amount is approximately 33% of the [ ] settlement amount after costs").

Plaintiff's counsel has worked without any compensation to date, and Plaintiff's counsel's fees have been wholly contingent upon the result achieved. As of the date of this filing, Plaintiff's counsel has spent approximately 47.8 hours investigating, researching, and litigating Plaintiff's claims, for a lodestar of $19,120.00.[2] See **Exhibit 3** for Plaintiff's counsel's contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done. *See Wolinsky*, 900 F. Supp. at 336.

*          *          *

For the foregoing reasons, the parties respectfully request that the Court approve the attached settlement agreement. We thank the Court for its time and consideration.

Respectfully submitted,

*/s/ William Brown*

cc: all parties via ECF

---

[2] The lodestar amount is based on an hourly rate of $400, an amount which is typically approved in this Circuit. *See Rodriguez-Hernandez v. K Bread & Co.*, No. 15 Civ. 6848, 2017 U.S. Dist. LEXIS 78034, 2017 WL 2266874, at *6 (S.D.N.Y. May 23, 2017) (lead counsel in New York typically charge between $300 and $400 per hour in wage-and-hour cases, and courts have approved hourly rates as high as $450).